PEOPLE ex rel. SMITH v. CREELMAN et al.

(Supreme Court, Appellate Division, First Department.   March 22, 1912.)

MUNICIPAL CORPORATIONS (§ 184*)—OFFICERS—CIVIL SERVICE.

Where one applying for appointment as patrolman became 30 years of age 7 days before the eligible list was made up, he was disqualified to have his name placed thereon, under Greater New York Charter (Laws 1901, c. 466, as amended by Laws 1907, c. 278) § 284, providing that no person shall be appointed patrolman who shall be at the date of placing his name on the civil service eligible list over 30 years of age, and it was immaterial that before he became of age he had taken the examinations and his papers had been examined and marked.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 482–486, 488–491; Dec. Dig. § 184.*]

Appeal from Special Term, New York County.

Action by the People, on the relation of Luke Smith, against James Creelman and others.   From a judgment for plaintiff, defendants appeal.   Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Archibald R. Watson, Corp. Counsel (Elliott S. Benedict, of counsel, and Terence Farley, on the brief), for appellants.

Alfred J. Talley, for respondent.

CLARKE, J.   Relator became 30 years of age on the 25th of September, 1911.   In September, 1910, he filed an application for appointment as patrolman in the police department.   He thereafter received notice to appear before the examiners of the municipal civil service commission, and on March 1, 1911, appeared and submitted to a physical examination.   2,290 applicants appeared for the medical test, of whom 1,460 were passed.   Of the 1,460 who took the physical tests, 1,322 passed.   The examinations were held on 25 different days before all of the candidates could be examined, and were concluded on May 10, 1911,   On July 14, 1911, notices were sent out to all those who had successfully passed the medical and physical tests to appear for the mental examination upon August 1, 1911. · 1,185 applicants appeared for said examination.   The final examination of the papers of these candidates and the computation of their marks was finished October 2, 1911, and the chief examiner notified the commission that the marks had been made up and placed upon the sched-

tle sheet. From this sheet the eligible list also was made up, omitting the names of all those who failed to pass the examination or were in any way disqualified. Among those who were disqualified by reason of the fact that he had become 30 years of age before the completion of the schedule sheet was the relator. For that reason his name was not placed upon the eligible list, which was established on October 2, 1911.

Section 284 of the Greater New York Charter (chapter 466, Laws 1901, as amended by chapter 278, Laws 1907) provides:

"No person shall be appointed patrolman who shall be at the date of placing his name on the civil service eligible list over thirty years of age."

The relator claims, and it is not denied, that he passed said examinations successfully, receiving more than the required minimum percentage, which was 70 per cent. He also claims that the establishment of said eligible list was completed and all papers therein rated on or about the 10th day of August, 1911, on which day deponent was under the age of 30 years, not having arrived at said age until the 25th day of September, 1911. He applied for a peremptory writ of mandamus commanding the civil service commission to place his name on the eligible list and to certify his name in its proper order to the police commissioner for appointment. The learned Special Term having granted the application, this appeal is taken.

Prior to 1907, section 284 of the Charter provided that:

"No person shall be appointed patrolman who shall be at the date of appointment over thirty years of age." Original Charter (chapter 378, Laws 1897), Revised Charter (chapter 466, Laws 1901).

It could well happen that a candidate who had successfully met all the requirements of the various examinations and had been duly placed upon the eligible list for appointment could thereafter lose his right to the appointment by mere efflux of time; no vacancy occurring and no certification having been made before he had arrived at the age of 30 years. In 1907 the Legislature altered the law, so that the limitation of age should apply to the placing of the applicant's name upon the eligible list, and not to the time of appointment.

It is obvious that, where an age limitation is provided, no rule establishing the event determining the limitation can be devised which may not work apparent hardship in an individual case. The Legislature evidently thought that it was fairer to fix this event as of the time of going upon the eligible list, rather than as of the time of appointment. But some definite and easily ascertainable time had to be fixed. So it was established to be "at the date of placing his name on the civil service eligible list." This does not mean the taking of the examination, nor the examination of the candidates' papers by the examiners, nor the marking thereof by said examiners; but it means, and must mean, the final completion of the whole process of examination and computation, as the result of which, not only the individual's competence, but the relative standing of all the candidates, is ascertained and fixed, and a definite list thereof prepared.

During the whole period of the medical, physical, and mental examinations, and the review of the papers and the computation of the

marks here under consideration, and up to the 2d of October, 1911, when this list was established, there was in existence an eligible list for the position of patrolman, which had been established June 18, 1910, and from which appointments were being made continuously. From August 1 to October 2, 1911, 75 patrolmen were appointed from that list. It is evident that the name of the relator had been placed on no eligible list up to the 2d of October, 1911. That 7 days before said date he arrived at the age of 30 years, and had therefore become disqualified, was his misfortune. But a hardship to an individual does not authorize the court to disregard the plain provisions of law.

The order appealed from should be reversed, with $10 costs and disbursements, and the application denied, with $10 costs to the appellants. All concur.